**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cindy Lynette Chapman,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>　　　　　　　　Defendant. | No. CV-13-01674-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Cindy Lynette Chapman seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. Doc. 13. For the reasons that follow, the Court will affirm the Commissioner's decision.

**I.　Background.**

Plaintiff applied for disability and supplemental security insurance benefits on July 29, 2009, alleging disability beginning June 1, 2008. Doc. 13 at 1. After a hearing on March 7, 2011, an administrative law judge ("ALJ") issued an opinion finding Plaintiff not disabled (A.R. 35-43). Plaintiff's request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. Doc. 15 at 2.

**II.　Legal Standard.**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court

may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

### A.  Five-Step Sequential Evaluation.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a) (4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the

claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act and that she has not engaged in substantial gainful activity since June 1, 2008. At step two, the ALJ found that Plaintiff has the severe impairments of pneumothorax, asthma, chronic fatigue, and obesity. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R.. § 404.1567(a). At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

**III.   Analysis.**

The only issue for review asserted at the outset of Plaintiff's brief is that the ALJ's decision is not supported by substantial evidence. Doc. 15 at 1. The Court, however, is only required to review those issues raised by the parties, s*ee Lewis*, 236 F.3d at 517 n.13, and simply asserting that the ALJ's decision is not supported by substantial evidence does not constitute raising a specific issue for review. Plaintiff does raise specific issues later in her brief. She argues that the ALJ erred in her determination about Plaintiff's credibility. Doc. 13 at 5. Although not clear from her brief, Plaintiff appears to argue that the ALJ erred in her assessment of the opinion of Dr. Angulo, a state-agency examining physician. Doc. 13 at 8. She further argues that the ALJ's RFC assessment is "not accurate, nor lawful[.]" *Id.* at 12. Finally, Plaintiff argues that the ALJ erred by not relying on testimony of the vocational expert that testified in this case. *Id.* at 13. The Court will consider each argument in turn.

**A.   Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine

whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. A.R. 39. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they were inconsistent with the ALJ's RFC assessment. A.R. 40.

Plaintiff takes issue with the ALJ's assessment of her medical records related to her pneumothoraces, which the ALJ concluded had resolved by late 2008. Plaintiff argues that even though her pneumothoraces may have resolved, "recurrent pleuritic chest pain interfered with [her] ability to take a deep breath[.]" Doc. 13 at 6. She goes on to argue that she was not "required to present herself to an emergency room every time a pneumothorax developed," and that her treating physician "had sufficient information at least to infer that Plaintiff 'may have had a small pneumothorax' the previous day, even though it was no longer apparent on a chest x-ray[.]" *Id.* (citing A.R. 409). Plaintiff's treating physician did note in December 2009 that Plaintiff may have had a small pneumothorax, but a chest x-ray conducted on that date noted that there were no pneumothoraces observed. A.R. 409. That Plaintiff's treating physician stated in December 2009 that Plaintiff "may have had a pneumothorax" is not a basis for concluding that the ALJ committed legal error in her assessment of these medical records.

The ALJ observed that in July 2008, Plaintiff was diagnosed with 30% pneumothorax but that subsequent examinations revealed improvement. A.R. 40. She noted that an August 2008 x-ray revealed that the pneumothorax had been reduced to 20%, that a September 2008 x-ray showed a pneumothorax of 15-20%; that a CT scan

1    performed in November 2008 "showed the left pneumothorax had resolved," that a
2    December 2009 x-ray "revealed the previous pneumothorax seen in the left base was no
3    longer present and there was no other pneumothorax seen," and that a January 2010 x-ray
4    did not show any evidence of pneumothorax.  *Id.*  The ALJ further noted that there "are
5    no medical records indicating the [Plaintiff] has had recent incidents of pneumothoraces,
6    as records reveal the most recent episode was resolved by November 2008."  *Id.*  These
7    are specific, clear, and convincing reasons for discounting Plaintiff's credibility.

8    The ALJ next discussed Plaintiff's asthma symptoms, observing that "medications
9    appear to be effective in controlling the [Plaintiff]'s symptoms," and that Plaintiff had
10   undergone "minimal and conservative treatment."  *Id.*  The ALJ also notes that Plaintiff
11   has received "little treatment specifically relating to fatigue," and that treatment records
12   "from 2009 and 2010 only show occasional complaints of fatigue" and no "report[s] [of]
13   malaise."  *Id.*  Additionally, the ALJ noted that "in July 2010, the [Plaintiff] reported no
14   problems with initiation or maintenance of sleeping and averaging 9 to 10 hours of sleep
15   per night."  *Id.*  These are specific, clear, and convincing reasons for discounting
16   Plaintiff's credibility.

17   Plaintiff takes issue with the ALJ's characterization of her complaints about
18   fatigue as "occasional" and cites several places in the record where she complained about
19   fatigue.  Doc. 13 at 7-8.  But Plaintiff's citations are misleading.  In many of the medical
20   records cited by Plaintiff, "malaise and fatigue" are listed under the heading "Active
21   Problems," but later in the same record, under the heading "Review of Systems," it is
22   noted that Plaintiff was "Not feeling tired (fatigue) and not feeling poorly (malaise)."
23   *See, e.g.*, A.R. 415-16.  This is not a basis for concluding that the ALJ committed legal
24   error.

25   The ALJ finally concluded that Plaintiff's daily activities were "not limited to the
26   extent one would expect, given the complaints of disabling symptoms and limitations,"
27   and noted that Plaintiff's alleged physical impairments did not appear to significantly
28   limit her daily functional abilities.  A.R. 41.  The ALJ noted that Plaintiff "reported

preparing simple meals, driving, shopping, managing finances, caring for her children, and working part time on a continuous basis for a number of years." *Id.*

Plaintiff argues that the ALJ's discussion of Plaintiff's activities of daily living is "internally inconsistent" because the ALJ noted that although Plaintiff "reported not being able to do all of these activities together on the same day, it is of importance that she is able to do all of these activities on a weekly basis." A.R. 41. Plaintiff cites to *Orn* for the proposition that "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" 495 F.3d at 639 (quoting *Fair v. Bowen*, 885 F.2d 597. 603 (9th Cir. 1989)). But Plaintiff provides no support for her assertion that her activities of daily living "were not of the type or extent or frequency that would permit an inference [that Plaintiff] was able to engage in the physical demands of work." Doc. 13 at 11. Considering the record as a whole, evidence that Plaintiff prepared meals, drove, shopped, managed finances, cared for children, and worked part time is relevant evidence that a reasonable person might accept as adequate to support the ALJ's conclusion that Plaintiff was not as limited as she alleged. *See Orn*, 495 F.3d at 630.

In sum, the reasons provided by the ALJ for discounting Plaintiff's credibility are specific, clear, and convincing, and supported by substantial evidence. The ALJ did not err in her evaluation of Plaintiff's credibility.

**B.  Dr. Angulo.[1]**

Plaintiff appears to contest the ALJ's decision to give great weight to Dr. Angulo's psychological assessment. The ALJ noted that Dr. Angulo indicated that "there are no indications that psychological factors are impeding her abilities to carry out activities of daily living affecting her cognitive capacities," and ultimately concluded that Plaintiff's "mental conditions were non-severe." A.R. 38. Plaintiff argues that the "ALJ appears

---

[1] Plaintiff's arguments on these points are confusing because she has included them in the section of her brief about the ALJ's credibility determination.

- 6 -

1   simply to have relied on limited segments of the psychological report, out of context . . .
2   and similarly misrepresented [Plaintiff]'s hearing testimony[.]"  Doc. 13 at 10.  But the
3   ALJ does not appear to have considered Dr. Angulo's opinion as to any of Plaintiff's
4   alleged mental health conditions in making her credibility determination.  Rather, she
5   relied on Dr. Angulo's psychological examination to conclude that Plaintiff's mental
6   impairments were non-severe (A.R. 38), and then discounted Dr. Angulo's physical
7   assessment of Plaintiff (A.R. 41).  The ALJ did not discuss depression or anxiety as a part
8   of her analysis of Plaintiff's credibility.  A.R. 40-41.

9   To the extent Plaintiff argues that the ALJ erred in her consideration of Dr.
10   Angulo's opinion by ignoring "discrepancies," Plaintiff does not identify any
11   discrepancies.  Plaintiff cites *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001),
12   for the proposition that a physician's statements "must be read in the context of the
13   overall diagnostic picture he draws," but does not explain how the ALJ failed to read Dr.
14   Angulo's report in context.  The *Holohan* court concluded that the ALJ there had erred
15   because he was "selective in his reliance on [the physician]'s treatment notes,
16   exaggerates in his description of their contents, and misattributes statements to [the
17   physician]."  246 F.3d at 1205.  Plaintiff has not identified the presence of any similar
18   circumstances here.

19   Dr. Angulo concluded that "[t]here are no indications that psychological factors
20   are impeding [Plaintiff's] abilities to carry out activities of daily living affecting her
21   cognitive capacities," and that "[f]rom a psychological point of view, no impediments are
22   observed or detected at this point[.]"  A.R. 319.  The ALJ used this as a basis for her
23   conclusion that Plaintiff's depression was non-severe.  A.R. 38.  Plaintiff does not
24   identify any portion of Dr. Angulo's report that the ALJ failed to consider, other than to
25   highlight what Plaintiff told Dr. Angulo during the examination.  Doc. 13 at 9.  Plaintiff
26   notes that she described "considerable anxiety" and "constant fatigue" to Dr. Angulo.  *Id.*
27   But Dr. Angulo clearly considered Plaintiff's complaints in reaching his conclusion
28   because he documented them in his report.  A.R. 315-16.  Thus, the Court cannot

conclude that the ALJ took Dr. Angulo's conclusion that Plaintiff's abilities were not impeded by psychological factors out of context.  The ALJ did not err in her consideration of Dr. Angulo's report.

Plaintiff also argues that she "objected at the hearing to the ALJ assigning any weight to Dr. Angulo's opinions, because he had not been provided any significant historical medical records and because [Plaintiff] described, during the evaluation, several manifestations 'likely to interfere at least episodically with the ability to work.'" Doc. 13 at 8.  Plaintiff's disagreement with the report of an examining physician is not a basis for reversal of the ALJ's decision, absent a showing that the ALJ erred in her consideration of the report.  Plaintiff has made no such showing.

### C. Residual Functional Capacity.

In her brief, Plaintiff "acknowledges that if this Court finds no material fact nor legal error with the ALJ's adverse credibility finding, then it likely must, as a matter of law, except (sic) that the RFC determination is similarly devoid of material fact or legal error."  Doc. 13 at 12.  Because the Court has concluded that the ALJ did not err in her evaluation of Plaintiff's credibility, it concludes that the ALJ did not err in her RFC determination.

### D. Vocational Expert.

Plaintiff argues that the ALJ's decision "did not rely on, and did not even mention, the vocational testimony, and particularly the part that substantiates [Plaintiff]'s claim she was, and remained, unable to perform [substantial gainful employment]."  Doc. 13 at 13.  She further argues that the vocational expert's testimony "establishes that, if Plaintiff's description of medical conditions that preclude her from working on a regular, sustained, and reliable schedule is deemed credible and a necessary aspect of the RFC determination, [Plaintiff] was unable to perform [substantial gainful employment]."  *Id.*  As noted above, however, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's credibility.  Accordingly, the Court cannot conclude that the ALJ committed any error in her consideration of the vocational expert's testimony.

**IT IS ORDERED:**

1. The Commissioner's decision is **affirmed**.

2. The Clerk is directed to enter judgment and **terminate** this action.

Dated this 26th day of August, 2014.

_____
David G. Campbell
United States District Judge